IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **TED KNOX** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL NO. 10-1001-GPM |
| **DOCTOR FURLONG, TERRY CALIPER,** | ) | |
| **KATHIE BUTLER, MARILYN MELTON,** | ) | |
| **CAROL GEORGE, LAURA QUALLS,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **and JHAN MILLER,** | ) | |
| | ) | |
| **Defendants.** | | |

### MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Ted Knox is currently incarcerated at Menard Correctional Center. He filed this pro se lawsuit pursuant to 42 U.S.C. § 1983 claiming Defendants were deliberately indifferent to his serious medical need in violation of his Eighth Amendment Rights.[1] Plaintiff alleges that during the summer of 2008 while he was incarcerated at Tamms Correctional Center, Defendants were aware of his need for dental care for his broken tooth, but delayed access to such care.

Defendant Terry Caliper filed a motion for summary judgment on July 31, 2012 (Doc. 60). Defendants Dennis Furlong, Kathie Butler, Marilyn Melton, Carol George, Laura Qualls, Jhan Miller, and Wexford Health Sources, Inc. also filed a joint motion for summary judgment on July 31, 2012 (Doc. 63). Both motions are supported by a memorandum and exhibits (Docs. 61, 63). Ms. Caliper claims she was not deliberately indifferent to Plaintiff's serious medical need, and asserts qualified immunity (Docs. 60 and 61). Defendants Furlong, Butler, Melton, George,

---

[1] Plaintiff's state-law claims for medical malpractice set forth in Count II and Count III of the complaint were dismissed with prejudice on February 21, 2012 (Doc. 50).

Qualls, Miller, and Wexford Health Sources, Inc. claim they were not state actors and therefore not subject to claims under § 1983. In the alternative, they argue they were not deliberately indifferent to Plaintiff's serious medical need, and also assert qualified immunity (Doc. 63). Plaintiff Ted Knox, filed response briefs to both motions for summary judgment, as well as supporting exhibits on August 31, 2012 (Docs. 66 and 67). The Court has considered the briefs, along with all other related materials submitted by the parties. For the following reasons summary judgment as to Defendants Butler, Melton, George, Qualls, and Miller is denied, and summary judgment as to Defendants Wexford Health Sources, Inc., Dr. Furlong, and Terry Caliper is granted.

## I. FACTS

Defendant Wexford Health Sources, Inc. ("Wexford") is a private corporation that contracts with the Illinois Department of Corrections ("IDOC") to provide health care services to inmates detained in IDOC facilities (Doc. 63). At all times relevant to this lawsuit, Dr. Dennis Furlong was employed by Wexford as a dentist at Tamms Correctional Center ("Tamms") (Doc. 63). Defendants Jhan Miller, Marilyn Melton, Kathie Butler, Carol George, and Laura Qualls were all employed by Wexford as nurses at Tamms (Doc. 63). Defendant Terry Caliper was the Health Care Unit Administrator at Tamms (Doc. 61).

Inmates at Tamms could request to see a dentist by submitting a written slip to a nurse or a correctional officer (Doc. 61), or by making a verbal request to a nurse during daily rounds in the units (Doc. 61). Medical request slips were collected daily between 11 p.m. and 7 a.m. by the shift nurse assigned to each housing unit (Doc. 61). The slips were reviewed by the nursing staff between 3 p.m. and 11 p.m., and appointments for the inmates were scheduled appropriately (Doc.

61). When an inmate requested specific routine or non-emergency dental service, the service had to be scheduled, but not necessarily performed, within 14 days of the request (Doc. 61).

On June 17, 2008, Plaintiff submitted a written request for various dental services, including a teeth cleaning, removal of his left upper molar, and a partial prosthetic (Doc. 61-1). Plaintiff's request was received and reviewed on June 18, 2008 by Stacey Williamson, Director of Nursing (Doc. 61-1). Two days later, on June 20, 2008, an appointment was made for Plaintiff to see the dentist on August 8, 2008 (Doc. 61-1).

On July 2, 2008, Plaintiff's molar broke (Doc. 61-1 pp. 15–16), and he later testified that he told Defendant Butler that his tooth had broken and that he "needed medical attention. I needed to see a dentist" (Doc. 61-1 pp. 16, 18-19). He claims Defendant Butler said "[t]hat basically she wasn't no dentist and wasn't nothing she would be able to do about it" (Doc. 61-1 p. 20). Plaintiff claims he also told Defendant Qualls that he "needed urgent medical care" (Doc. 61-1 p. 26), and that she also told him there was nothing she could do (Doc. 61-1 p. 27). On July 23, 2008, Plaintiff claims he told Defendant Melton that "I had a broken tooth on the left upper side of my mouth. Pus and blood and stuff was coming up out of the surrounding area. I was in a lot of pain and stuff like that" (Doc. 61-1 pp. 29-31). Defendant Melton also told Plaintiff that there was nothing she could do (Doc. 61-1 p. 31). Plaintiff claims he then complained to Defendant Miller on July 26, 2003 (Doc. 61-1 pp. 31-33, 35). It is unclear what Defendant Miller's response was to Plaintiff's complaints, although it seems that she also did not respond to his requests.

Responding to Defendants' motions for summary judgment, Plaintiff submitted affidavits from inmates Markus Hunter and Jason Trimby corroborating that Plaintiff complained to various nurses about his dental issue (Doc 66-2). Mr. Hunter stated the nurses told Plaintiff "that he was a

crybaby and wasn't [sic] going to get in the middle of the dentist, Mr. Furlong, and Terry Caliper's decisions regarding care" (Doc. 66-2).

Plaintiff also produced written medical requests dated July 2, 5, 10, and 28, 2008 and August 8 and 9, 2008 addressed to Terry Caliper and/or Dr. Furlong indicating that he was in urgent need of dental care (Docs. 66-1, 66-2). Nigel Vinyard, the Health Care Unit Administrator at Tamms, countered that the only medical requests the Health Care Unit received from Plaintiff were his original dental request dated June 17, 2008 and his request dated August 9, 2008 (Doc. 61-1).

Plaintiff filed a grievance on July 27, 2008 claiming that he was being "deliberately denied medical treatment" and requesting "dental care without further delay" (Doc. 61-1). Defendant Caliper claims she received Plaintiff's grievance on August 1, 2008, and she responded by telling Plaintiff that if he requested to see a dentist that he would be scheduled accordingly (Doc. 61-1).

On August 8, 2008, Plaintiff did not see the dentist despite his previously scheduled appointment. That same day, Plaintiff claims he submitted a written request to see the dentist (Doc. 66-2). The next day, August 9, 2008, Plaintiff submitted another written request to see a dentist (Doc. 61-1). Defendant Caliper claims Plaintiff's written request dated August 9, 2008 was received by the Health Care Unit on August 12, 2008 (Doc. 61-1). An appointment was then made for Plaintiff to see a dentist three days later on August 15, 2008 (Doc. 61-1). On August 15, 2008, Plaintiff was examined by Dr. Furlong and his tooth was extracted (Doc. 61-1).

## II. ANALYSIS

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.… A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). "We often call summary judgment, the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely." *Goodman v. National Security Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010).

All of the Defendants, with the exception of Wexford, claim that there is no Eighth Amendment violation for deliberate indifference to a serious medical need and they are therefore entitled to qualified immunity. The doctrine of qualified immunity shields government officials from suits arising out of their discretionary functions when their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Hernandez v. Cook County Sheriff's Office,* 643 F.3d 906, 914 (7th Cir. 2011). Officers "who act unreasonably or 'who knowingly violate the law'" are not protected by qualified immunity. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1014 (7th Cir. 2006), *quoting Hunter v. Bryant*, 502 U.S. 224, 228 (1991). The Court makes two inquiries in evaluating a qualified immunity defense: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the

defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Hernandez*, 643 F.3d at 914.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST. amend. VIII; *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes intentionally delaying access to medical or dental care. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009).

A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Greeno*, 414 F.3d at 653, *citing Farmer v. Brennan,* 511 U.S. 825, 834, (1994) (internal quotations omitted). A serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). To satisfy the subjective component, a prisoner must demonstrate that the prison official "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653. "Deliberate indifference cannot rest on negligent actions or inactions, but must instead rest on reckless indifference to the plight of an inmate." *Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003).

Here, the first prong of the deliberate indifference analysis—a serious medical

condition—is not arguably in dispute (*See* Docs. 61, 63). Plaintiff had a molar that was loose and eventually broke. The unrefuted evidence shows that the broken tooth was infected, discharged blood and pus, and caused severe pain rendering Plaintiff unable to talk or eat. When Plaintiff was seen by a dentist, the tooth was immediately extracted. Such tooth decay constitutes a serious medical condition because of the pain and the risk of infection. *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010), *citing Board v. Farnham,* 394 F.3d 469, 480-81 & n. 4, 482-83 (7th Cir. 2005). The second prong of the deliberate indifference analysis—whether the Defendants were deliberately indifferent to Plaintiff's serious dental need—requires a closer look.

**A.     Wexford Health Sources, Inc.**

Defendants argument for summary judgment in favor of Wexford is undeveloped (*See* Doc. 63). Defendants assert without elaboration that Wexford is not a state actor and therefore not liable under § 1983 for Plaintiff's claim of deliberate indifference (Doc. 63). "But stating blankly what one's argument *is* and actually *arguing* a position are different things." *Raghunathan v. Holder*, 604 F.3d 371, 378 (7th Cir. 2010) (emphasis in original). Defendants did not cite to any case law, did not reference the legal standard for holding a private corporation liable under § 1983, and did not set forth or analyze any relevant facts. "[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *United States v. Holm,* 326 F.3d 872, 877 (7th Cir. 2003).

Nevertheless, Defendants' motion for summary judgment as to Wexford is granted. It is well-established that there is no respondeat superior liability under § 1983, and a private corporation is not vicariously liable for its employee's deprivations of another's civil rights. *Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 (7th Cir. 2002) (quotation marks and

citations omitted). To maintain a § 1983 action against a private corporation, a plaintiff must demonstrate that a constitutional deprivation occurred as the result of a policy or practice of the corporation. *Id.*

Plaintiff alleged that Wexford is liable under § 1983 because his injuries were caused by "the failure of Wexford to have proper policies or procedures for the treatment of his condition" (Doc. 67-1). Specifically, Plaintiff argues that Wexford failed to have a policy in place regarding the dental care of "diabetic patients with a gum disease" (Doc. 67-1). Plaintiff further argues that Wexford should have had a policy in place to provide access to a 24-hour on-call dentist to an inmate with a broken tooth, however, Wexford only had one dentist available for eight hours per week (Doc. 67-1).

Plaintiff's allegations are not sufficient to conclude that Wexford's express policy, or lack thereof, violated the Constitution. Wexford does not and could not have policies in place about virtually everything that might happen. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). The Supreme Court has repeatedly cautioned against drawing the inference that the absence of a policy reflects a decision to act unconstitutionally. *Id.* Additionally, Plaintiff has not made a showing that the alleged constitutional deprivation was anything more than an isolated incident. There is no evidence that other inmates were affected by the absence of the two policies described by Plaintiff. In situations where an inmate complains about the absence of an express policy, "the claim requires more evidence than a single incident to establish liability." *Calhoun*, 408 F.3d at 380. Therefore, Plaintiff's claims against Wexford must fail as a matter of law and summary judgment is granted in favor of Defendant Wexford Health Sources, Inc.

### B. Nurses Employed by Wexford Health Sources, Inc.

Defendants Butler, Melton, George, Qualls, and Miller were employed by Wexford as nurses at Tamms Correctional Center. The nurses seek summary judgment in their favor on several grounds. First, they argue they were not state actors but rather employees of a private corporation, and therefore are not subject to claims of deliberate indifference under § 1983. In the alternative, the nurses argue that if they were acting under the color of state law, they were not deliberately indifferent to Plaintiff's serious medical needs, and they are protected by qualified immunity (Doc. 63). For the following reasons, the nurses fail to establish they are entitled to judgment as a matter of law and Defendants' motion for summary judgment as to Defendants Butler, Melton, George, Qualls, and Miller is denied.

Physicians and nurses employed by private corporations that contract with prisons to provide medical care to inmates can be held liable under § 1983 if they acted under color of state law. *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). In the Seventh Circuit's view, a private actor who voluntarily assumes the state's responsibility to provide medical care to prisoners at any location should be deemed a state actor. *Rice ex rel. Rice v. Corr. Med. Servs.,* 675 F.3d 650, 672 (7th Cir. 2012); *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 827–28 (7th Cir. 2009).

> When a party enters into a contractual relationship with the state penal institution to provide specific medical services to inmates, it is undertaking freely, and for consideration, responsibility for a specific portion of the state's overall obligation to provide medical care for incarcerated persons. In such a circumstance, the provider has assumed freely the same liability as the state. Similarly, when a person accepts employment with a private entity that contracts with the state, he understands that he is accepting the responsibility to perform his duties in conformity with the Constitution.

*Rodriguez*, 577 F.3d at 827. Conversely, a private actor who has "only an incidental and

transitory relationship with the state's penal system" or "an attenuated relationship with the prisoner-patient" should not be deemed a state actor. *Rice ex rel. Rice*, 675 F.3d at 672; *Rodriguez*, 577 F.3d at 827–28.

Wexford contracted with the IDOC, and voluntarily assumed the State of Illinois' responsibility, to provide medical care to inmates incarcerated at IDOC facilities. In turn, Defendants Butler, Melton, George, Qualls, and Miller accepted employment with Wexford as nurses at Tamms Correctional Center (Doc. 63). Therefore, during their employment with Wexford, the Defendant nurses were acting under color of state law, and they are subject to claims of deliberate indifference under § 1983.

The nurses argue that they could not have acted with deliberate indifference to Plaintiff's serious medical need because they were subjectively unaware of Plaintiff's dental condition and pain (Doc. 63). The nurses rely exclusively on their own affidavits in which they each aver that Plaintiff never complained to them about his dental concerns (Doc. 63). Conversely, Plaintiff asserted in his own sworn deposition testimony that he told each nurse he required dental care (Doc. 61-1).[2] Plaintiff also submitted the affidavits of two fellow inmates which corroborate his testimony (Doc. 66-2). This is a classic swearing contest, the resolution of which would require the Court to make credibility determinations and weigh the competing testimony. However, on summary judgment the Court cannot decide who to believe; it can only determine if there are

---

[2] The deposition does not specifically refer to Nurse George. In his Complaint, Plaintiff states that he complained to Nurse George on July 28, 2008 and that she ignored him and failed to provide care (Doc. 1). As a general rule, allegations in a Complaint are not evidence. *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 810 (7th Cir. 2003). However, while the Complaint in this matter is not in the form of an affidavit, in his deposition while under oath, Plaintiff referred to his Complaint as being an accurate representation of the events and an accurate statement of the facts (Doc. 61-1). This Court gives the benefit of the doubt to Plaintiff and finds his sworn deposition testimony that essentially states the allegations made in the Complaint are true, converts his Complaint into a sworn statement.

factual disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). The competing testimony establishes nothing if not the existence of a factual dispute as to whether the nurses were subjectively aware of Plaintiff's serious medical need.

The nurses also argue that even if they had been aware of Plaintiff's serious medical need, they were not deliberately indifferent to such need because they were not involved in the scheduling of treatment and their "role is merely to pass on written requests for nursing care to the medical coordinator at Tamms Correctional Center" (Doc. 63). If Plaintiff had complained to them, the nurses would have checked Plaintiff's chart and saw that he was already scheduled for a dentist appointment on August 8, 2012 (Doc. 63). It appears that Defendants are arguing that the nurses were not deliberately indifferent because their role was limited to that of a messenger, and it is apparent that the message had been received because Plaintiff had an appointment to see the dentist. However, Plaintiff asserts that when he told each nurse that his tooth broke and his condition had worsened, the nurses indicated to Plaintiff that they would do nothing. If the nurses' job was merely to pass along requests for urgent medical care, a jury could find that the nurses exhibited deliberate indifference to Plaintiff's dental needs when they wholly ignored his requests. Of course, a jury could also find that the nurses exhibited deliberate indifference by failing to take any steps to address his complaints of pain, such as providing Plaintiff with pain medication, or examining Plaintiff to investigate whether his condition had in fact worsened and he was having a dental emergency.

Because there is an issue of fact as to whether the nurses were subjectively aware of Plaintiff's serious medical need, and a reasonable jury could conclude that Defendants were deliberately indifferent to such need, Defendants' motion for summary judgment as to Defendants

Butler, Melton, George, Qualls, and Miller on the issue of deliberate indifference is denied.

Furthermore, the Defendant nurses are not entitled to qualified immunity.[3] As discussed above, the Court has concluded that under the version of facts most favorable to Plaintiff, a reasonable jury could conclude that the nurses were deliberately indifferent to Plaintiff's serious medical need. The law is clear that inmates have a constitutional right to adequate medical treatment, and "dental care is one of the most important medical needs of inmates." *Board v. Farnham*, 394 F.3d 469, 480, 481 (7th Cir. 2005). Therefore, Plaintiff has met his burden of showing that a genuine issue of fact exists as to whether the nurses violated one of his clearly established constitutional rights. Defendants' motion for summary judgment as to Defendants Butler, Melton, George, Qualls, and Miller on the issue of qualified immunity is denied.

## C.     Dr. Dennis Furlong

Defendant Dr. Furlong was employed by Wexford as a dentist at Tamms Correctional Center. Dr. Furlong sets forth the same arguments as the nurses regarding his entitlement to summary judgment—that he was not a state actor, that he was not deliberately indifferent to Plaintiff's serious medical need, and that he is protected by qualified immunity (Doc. 63). Dr. Furlong's argument that he was not state actor must fail. Similar to the nurses, during his employment with Wexford, Dr. Furlong provided care to inmates at the prison pursuant to Wexford's contract with the Illinois Department of Corrections. Therefore, he was acting under color of state law, and he is subject to claims of deliberate indifference under § 1983. However, in considering the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish that Dr. Furlong acted with deliberate indifference to Plaintiff's dental condition

---

[3] Defendants assert in the point heading for section C of their brief that the nurses are entitled to qualified immunity (Doc. 63). However, the only analysis on the issue of qualified immunity relates to Dr. Furlong (Doc. 63). As it relates to the nurses, Defendants did not set forth any facts or actually argue their position (*See* Doc. 63).

and pain. That is, even taking Plaintiff's version of events as true, the facts do not show that Dr. Furlong violated Plaintiff's constitutional right.

Plaintiff assumed that his written medical requests, his grievance, his counselor, and the nurses alerted Dr. Furlong to Plaintiff's dental condition (Doc. 61-1). However, there is no evidence that medical requests were regularly forwarded to Dr. Furlong or that part of Dr. Furlong's job was to review medical requests. There is also no evidence that the nurses or the counselor actually spoke to Dr. Furlong about Plaintiff. Additionally, Dr. Furlong had no control over when he would examine or treat the inmates (Doc. 63). The inmates were scheduled to see Dr. Furlong by the IDOC employees and when Dr. Furlong arrived each day at Tamms, he was provided with a list of the inmates that he would be seeing that day (Doc. 63). Thus, Plaintiff cannot show that Dr. Furlong was aware of his dental condition. In turn, Dr. Furlong could not have acted with deliberate indifference to Plaintiff's dental condition and pain if he was not even aware of it. Therefore, Defendants' motion for summary judgment as to Dr. Furlong is granted.

**D.     Terry Caliper**

At all relevant times herein, Defendant Terry Caliper was employed by the IDOC as the Health Care Unit Administrator at Tamms (Doc. 61-1). Ms. Caliper seeks summary judgment in her favor on the grounds that "Plaintiff cannot meet the subjective burden of a deliberate indifference claim," and she is entitled to qualified immunity (Doc. 61). In considering the facts in the light most favorable to Plaintiff, the Court agrees with Ms. Caliper and finds that Plaintiff has failed to establish that Ms. Caliper acted with deliberate indifference to Plaintiff's serious medical need.

Plaintiff did not personally discuss his condition with Ms. Caliper, but assumed that she

received notice of his condition from the nurses to whom he verbally complained, or through the written medical requests he submitted (Doc. 61-1). However, there is no evidence that the nurses actually spoke to Ms. Caliper about Plaintiff. Additionally, there is no evidence that Ms. Caliper knew of Plaintiff's written requests until August 1, 2008 when she received the grievance that he had filed (Doc. 61). Ms. Caliper responded to Plaintiff's grievance and indicated that if Plaintiff requested to see the dentist, he would be scheduled accordingly (Doc. 61). Plaintiff then submitted a request to see a dentist on August 9, 2008, which was received by the Health Care Unit on August 12, 2008 (Doc. 61). That request was reviewed and initialed by Ms. Caliper, and Plaintiff was scheduled to see a dentist on August 15, 2008 (Doc. 61). Thus, Ms. Caliper did not act with deliberate indifference to Plaintiff's serious medical needs, because she scheduled Plaintiff for medical treatment within 14 days of becoming aware of his condition, and within 3 days of receiving his request for medical care (Doc. 61). Defendants' motion for summary judgment as to Ms. Caliper is granted.

### III. CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED** in favor of Defendants Terry Caliper, Wexford Health Sources, Inc., and Dr. Dennis Furlong. Summary judgment is **DENIED** with respect to Defendants Kathie Butler, Marilyn Melton, Carol George, Laura Qualls, and Jhan Miller. Consistent with this Order, this case will proceed against Defendants Butler, Melton, George, Qualls, and Miller.

**IT IS SO ORDERED.**

DATED:   March 27, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge
